The next case on the call is 5-16-277, People v. Sanford. Counselor, you may proceed. May it please the Court, Counsel. My name is Saloma Q.R. Wilson, and on behalf of the Office of the State Appellate Defender, I represent Melvin Sanford. I will focus my argument today on Issue 2 in Melvin's briefs, that is, that Melvin's convictions should be vacated and the charges against him dismissed because his statutory right to speedy trial is violated. After his arrest on December 14, 2014, Melvin was held in custody for more than 120 days before he was brought to trial. He did not cause any delays that kept him from trial during that time until he filed a motion on May 8, 2015. The first trial date that was outside the speedy trial term was May 18, and that trial date was set by the Court through an order that was issued on March 25, following a hearing on March 17. Therefore, the key period of time to be resolved in this case is whether the continuance on March 17 that took the trial date outside the speedy trial term is attributable to Melvin. And that continuance cannot be attributable to him for several reasons. One, any delay that was caused by the withdrawal of Melvin's counsel during that time, from the time he got arrested and was appointed his first attorney up until the time he filed the May 8 motion, cannot be attributed to him because all his attorneys withdrew because of a conflict of interest. And this Court has held in Column and in Roberts that when an attorney withdraws from a case because of a conflict of interest, that delay is not attributable to the defendant. In People v. Bowman, the Court noted that under those circumstances, both counsel and defendant have no choice in whether or not counsel can continue. And that's why Bowman is distinguishable from this case from Roberts and from Column and also from Solis because in all those cases, the defendant either had a hand in the withdrawal or in Solis, the attorneys created the conflict and then waited until the eve of trial to point out the conflict in order to cause the delay that can be characterized as gaming the system or gamesmanship. That is not present in this case. And in fact, the continual withdrawal of the attorneys shows the unfairness of attributing this delay to Melvin. He was appointed five attorneys and he was an indigent defendant. Therefore, he had no choice in who was appointed in this case. And in each instance, counsel withdraws. Melvin has no choice in who replaces him because, again, he is indigent and he is relying on the Court to appoint a public defender. And Melvin has no choice in who that public defender can be. That is established Illinois law. You said May – what day are you saying is the date attributable to him? May 8th is the day he filed the motion for speedy trial. And then May 15th or May – sorry, May 11th, I think, he files the motion to suppress. May 11th. Yes. Okay. Because you had said May 18th. May 18th is the trial date. Okay. But the motion to suppress, do you agree, caused the delay on May 11, 2015? Yes. There is some – the State argues that we – that Melvin is responsible for a delay that comes up. After the motion to suppress, the Court sets the date for resolving that motion. The State comes and causes a further delay. But the State is contending we are responsible for those six days. But the State caused that delay by filing a motion to continue that. But my focus is on from his arrest until May 8th, delays caused by withdrawal of his counsel is not attributable to him. And therefore, he's not – the 120 days had run by April 13th. The second reason that the Court – April 13th of 2015? Correct. The day that his fifth attorney was filing an appearance to represent him. In between that – the other reason the Court attributed the March 17th – the March 17th continuance to Melvin was because his co-defendants had filed motions to sever trial. And the State argues that those motions should be attributable to Melvin as well. However, those motions had nothing to do with Melvin. Melvin was not represented when the Court entered the order continuing the case because of those motions. He had no attorney. His attorney had been allowed to withdraw before. And as soon as Melvin had conflict-free counsel, Melvin filed a motion to challenge the March 17th continuance being attributed to him, both because, I mean, he was in prison and did not get notice of the trial date being set outside the trial term I think it would be early April because his fourth attorney, before withdrawing, had refused to file motions on Melvin's behalf. Therefore, by the time the Court is appointing him the fifth attorney, who ended up taking him to trial, it's March – I mean, it's April already. He ends up convincing that attorney to file his motion. And that motion is resolved in May. And how was it brought to the Court's attention about the fourth attorney being a problem? It's all through motions. I don't think he ever appears in court. Did he file a pro se motion? He didn't. So the fourth attorney, I think it's Zuber, filed a motion to withdraw. While that motion was pending, Melvin sent a letter to the Court complaining about that attorney. So it wasn't a pro se motion. So the letter – you don't think the letter could be attributed as a delay? No, because, again, Zuber already has a motion pending to withdraw for conflict. The Court enters or addresses or references the letter the same day it enters – grants the motion to withdraw. There's no delay caused by that letter. But the letter and the order granting the fourth attorney motion to withdraw was filed the same day? Yes. The order was filed the same day. I think the docket notes – I'm not completely sure, but I think the docket sheets show that the Court received that letter or addressed that letter on April 2nd, the same day that it's granting the motion to withdraw for Zuber. There is no indication in the record that that letter that he sent caused any delay. And, again, the delay – any delay between Zuber's motion is not attributable to Melvin because, again, it's his counsel withdrawing. And according to this Court's decisions in Cullin and Roberts, that's not attributable to him. So the – the cordel that says that defense – that defense has to object to either the defender – codependent's motion or to the trial being set outside the speedy trial motion, the speedy trial term has no time limit. We can assume that it's reasonableness. And under the facts of this case, the first time that Melvin can reasonably object to the trial being set outside the term is when he has conflict-free counsel who's finally willing to listen to him and file that objection, which he does on May 8th. All the other actions that have been taken in this case – the appointment of four attorneys who were all – all had conflicts, the filings of motions to sever by the codependents, the refusal to file his objection, and mailing the order that set the trial date to the wrong address while he was incarcerated have nothing to do with Melvin. Melvin does not take these actions that cause this delay. And it would be fundamentally unfair to hold him to that. Their position is that the time expired on April 13th, right? Correct. So anything that would have happened after that, all of these May dates that you're talking about, the May – the hearing that the court held on May 22nd, for example, all of that would have been outside the 120 days. Yes. Those dates are included just to further show before we get to August there were other dates that were not attributed to him because the trial finally happens in August. But your argument for this court is that because there was no trial by April 13th, 2015 – That his speedy trial term had run. I stand on the further arguments that I've made in my brief, but the core argument is that between December 2014 and April 13th, none of those delays are attributable to Melvin, and he should have been tried by then. And what was the date of the speedy trial motion? Or there didn't have to be one because he was incarcerated? He made a demand – the first appearance, he made a demand for trial. Is that your question? Yes. And so that demand, is that included in your counting of the April 13th, 2015? On the date of the demand until April 13th was 120 days? Or from the date of the incarceration? From the date of the incarceration. And the state has conceded or agreed that April 13th would have been the 120 days. Right. So that's what I'm just trying to get. Both sides seem to agree anyway that April 13th, 2015 was the date he should have been brought to trial. Correct. Okay. If there are no further questions, we ask that this Court reverse Melvin's convictions and discharge him. May it please the Court. Counsel. Jennifer Camden on behalf of the people. One, again, to what Your Honor just said. The parties do agree that April 13th would have been the date. The state would add that that would have been the date if the Court on March 17th had not already extended the trial date to May 18th and at that time attributed the delay to the defendant. That's what prevented the date from actually running on April 13th. So the March 17th date that was attributed to the defendant was based on what? Motion? Or what event? What event? It was based on a number of events, Your Honor. And the people in the answer brief present four different arguments why the Court did not use discretion in attributing the March 17th continuance to the defendant. So it was a continuance of the trial date? Yes. The trial date had been set within that 120 days. It had been set for March 23rd. And on March 17th, the date of the final, what would have been the final pretrial hearing, the Court granted a continuance of the trial date to May 18th. One reason that that happened and one reason the Court didn't abuse its discretion is that on March 11th, the defendant's then counsel, Burrell, filed a motion to continue the trial because he couldn't attend the final pretrial hearing on the 17th of March and because he was moving to withdraw. And, of course, the rule is that continuances requested or agreed to by counsel are attributed to the defendant. But what about the joint, the fact it was a joint motion? He was also asking to withdraw. So if you withdraw, you obviously can't attend the trial. Well, he filed two separate motions, Your Honor. One was to continue the trial. It wasn't just a continuance of the pretrial hearing. He was requesting a motion to continue the trial. But he has to withdraw. Right. And then separately he filed a motion to withdraw. And he filed it on the same date, but it was a separate motion. What's the basis of his motion to continue? The basis of the motion to continue was that he wouldn't be able to attend the March 17th hearing and that he was moving to withdraw as counsel. Do you agree with the principle of law that when the court allows a withdrawal that the delay should not be attributed to the defendant? Do you agree with that principle? I mean, that's what they're arguing. Your Honor, that's the Column Roberts argument. And the State's response to that is that the precedent of those cases has really been curtailed under the Bowman case. I think the more modern view is that it's not an abuse of discretion to attribute that delay to the defendant because although the defendant argues that he didn't have any choice in any of this, he did have a choice to be represented by counsel. And he didn't repudiate that representation. He acquiesced to that representation. And that means acquiescence to the trial strategy decisions, including the request to continue the case. Also, the second reason that the Court didn't abuse its discretion was that Burrell didn't appear at that scheduled final pretrial hearing and that that absence caused a delay attributable to the defendant. But the Court knew he wasn't going to be there. That's true. But it's a motion file. That's true. But at the same time, the withdrawal issue may have been settled prior to that hearing, but the issue of the continuance wasn't. And that brings us to the defendant present for that hearing? He was, Your Honor. Also at that hearing, the co-defendants had sought continuances, and the Court granted those motions. And, of course, the rule is that a defendant can be charged with a continuance that's occasioned by a co-defendant if he fails to object or to move for severance. And in this case, that's the third reason that the State is arguing that the Court didn't abuse its discretion in attributing the March 17th delay to the defendant. Now, of course, the defendant is arguing that he did object to a continuance. But the – again, we're talking about a continuance that was granted on March 17th. This objection was filed on May 8th, what, seven weeks later? So the people are arguing that the objection was untimely and that it wasn't an abuse of discretion for the Court to attribute that delay to him because his own actions contributed to the delay. I'd also note the importance of what happened on April 13th, which was a pivotal day for the reasons that Your Honor's already identified, and that's that on April 7th, the Court appointed the attorney who ended up being trial counsel. That's Mansfield. And defendant and Mansfield both attended a case management conference, coincidentally, on April 13th. And at that case management conference, and this is from the docket entry for that day, quote, Mansfield stated that he believed he would be ready for trial as scheduled. Now, trial had previously been scheduled for May 18th. So when he said on April 13th that he would be ready for trial as scheduled, he was saying that he'd be ready for trial on May 18th. He was, in essence, agreeing to that trial date. Now, the defendant did not object to Mansfield's representation of him or tried to repudiate that statement as unauthorized or complain at that time about the March 17th continuance. And the State's arguing that he's bound by Mansfield agreement and is stopped from arguing that the May 18th trial date violates his speedy trial date. It was nearly a month later, on May 8th, that Mansfield then filed an objection to the March 17th delay after, again, three or so weeks before, having previously said he would be ready for trial on the May 18th trial date. And the defendant was present. The defendant was present on April 13th, yes, Your Honor. Do you think that the trial court has an obligation every time these delays are attributed to the defendant to advise the defendant as to whether or not the decision is going to impact his speedy trial rate? Your Honor, I haven't seen any case law stating that the trial court has that duty. I think that, in this case, the defendant, in March, acquiesced to Burrell's withdrawal and acquiesced to the appointment of new counsel, and then acquiesced and, indeed, insisted on Zuber's withdrawal in early April. I'd note that that pro se letter that was discussed complained about Zuber's performance for other reasons but didn't mention his later allegation that Zuber had refused to file a motion to object to the delay, even though that had, according to the defendant, already occurred. But that letter was not filed the same day as the order was, or was it? I believe that it was – well, it was – the letter was filed in the court on April 2nd, I believe. But the continuance had already occurred. Absolutely. So for these reasons, the defendant hasn't met his burden of showing that the court's attribution of delay was an abuse of discretion that – which would be required to show plain error. And, again, I'd emphasize that this is a plain error review issue due to forfeiture. If the Court doesn't have further questions about the speedy trial issue, I'd like to make a note about Issue 1, which is the search and seizure issue. I'd like to talk to you. Good. And what I'd like to emphasize is that, according to the U.S. Supreme Court's case in Dickerson and the Illinois Supreme Court Jones case, under the plain view doctrine it must be immediately apparent that an object in plain view is of an incriminating nature, but immediately apparent means immediately apparent without any further search. And the word search, it means search in the Fourth Amendment sense, in the constitutional sense. If a further investigation is required to establish an object's incriminating character and hence probable cause, but not a further search in the constitutional sense, then its nature still counts as immediately apparent under the plain view doctrine, under Dickerson and Jones. And so the object may be seized if the other elements of the plain view test are met. And what I want to say is that the State asserted in the answer brief that the defendant had cited no case extending that Dickerson principle to bar the seizure of an item in plain view that was not subjected to a further search under the Fourth Amendment. I don't want to interrupt you, but what was seized were two telephones, right? I mean, that's what we're talking about, two telephones. And the only way to have known they were stolen was to look at them. I disagree, Your Honor. Tell me why. The officers saw the phones. They didn't know if they were stolen or not. In the car. They just see phones. Phones are fungible items. Not a gun, right? A phone. A phone. And knowing that phones were reported stolen, but still. Okay. And the officers obtained physical descriptions of the stolen items. Phones? Yes, the phones that they saw matched those descriptions. Was something distinct about them? One was a red Samsung Galaxy. Okay, go ahead. The officer then obtained from a fellow officer the phone numbers of the victims' phones, the stolen phones, and called them. That's my question. And one of them lit up and ran. Right. So is that a search? It's not a search. How can it not be a search if, in order to prove that that was the phone, somebody had to know that number, they called the phone, and it lit up? I mean, I leave my phone everywhere. They have to call it to find it. So how can that not be a determination of the phone? I mean, that's not. We're having trouble with the plane you got from there. Well, Your Honor, I answered that. A search occurs when an expectation of privacy considered reasonable by society is infringed. So I'd argue that no reasonable expectation of privacy held by the defendant was infringed by any state action in that case. So what you're saying is he had no standing to raise that, maybe. Well, he would argue that he has. I posit that there are two different acts that we're talking about here. The defendant actually is not arguing in his briefs that the physical act of calling the phone was of a constitutional consequence. He's not arguing that that's the search. He's arguing that the search occurred when the officer then reached into the pocket and extracted the phone. And it's the state's response to that argument that by the time that he did that, which was after the phone lit up and rang in response to that call, probable cause had already arisen. Because when he called the number that he knew was the number of the stolen phone and saw the phone in the pocket light up and ring, he had probable cause to believe that that phone was the stolen phone, and he then reached in with probable cause under the Plain View Doctrine. But it seems to me that it's a slippery slope between having phones in the back pocket of your car as being a Plain View item. Unless there's something, like, unique about the phone, it's in a red case or, you know, if you have a phone that's in the back pocket of a seat and you say, well, it's a Samsung Galaxy phone, how does one really know that? Or if I look at the record more carefully, will it be evident? Yes, Your Honor, I believe it will be evident that, number one, that the officer did vision – the phone was visible inside the pocket before. Yes, so was it unique so that when you think about Plain View, you think about something that's in and of itself, you know, capable of being used to commit a crime or is evidence of a crime, a lady stolen a purse, a guy's car. Well, to coin the phrase, immediately apparent, right? Immediately apparent. Yes, it was immediately apparent. And that's what we're arguing about. Was it immediately apparent? Is that what we're going to say is that following is immediately apparent? Well, was it immediately apparent that it was the threat of a crime, that it was subject to seizure? And the State's argument is that the immediately apparent framework, rubric, means immediately apparent without any further search, and search means search in a constitutional sense, the intrusion into a constitutionally protected interest, and that the act of calling a phone was not a search in the constitutional sense. It wasn't a physical intrusion. It didn't intrude on any – on any privacy interests of the defendant. And the defendant isn't arguing that that was a search. What we're arguing about is whether immediately apparent means immediately apparent without a constitutional search, a further act, or whether immediately apparent, as I think the defendant would argue, means immediately apparent without any further investigation. That's what we're arguing about. And it's the State's position that further investigation that does not rise to the level of a further search is within the plain view doctrine. And I'd note also that the defendant in the reclivery cited a couple of Sixth Circuit cases, McIlvain and Simwiak, and I'd note that both of those cases involved further searches, searches in the constitutional sense, not further investigations. That's what it seems like that you've gotten to, though, is the constitutional plain view doctrine changed once the phone number rang to, as you said, probable cause now to reach in, which is very different between the just plain view versus now having probable cause to reach in and get that phone. So it seems like there's two levels here. I didn't quite follow what Your Honor said about the plain view changing. Well, so you say that the phone was in plain view. Right. That's something usually reserved for immediately apparent that there's a crime or, for example, a gun. Sure. But you've also claimed that once they dialed the number, probable cause arose to reach in and get the phone. So do you ever really need the plain view argument if you had probable cause to get it in the first place? Well, I – I mean, he didn't reach in to get it until he saw the phone. Right, until he saw it. Right. Well, under the plain view doctrine, the warrantless seizure is justified if the incriminating character is immediately apparent. And, of course, if something's immediately apparent, if the incriminating character of an item in the vehicle is immediately apparent, then probable cause arises and it can be seized. But I'm way over. I know. We've had a conversation. Okay, thank you. One question. Yes. What was the status of the defendant when all this was going on? He and the other occupants of the vehicle were not in the vehicle. They'd been removed already. Were they restrained? I believe they'd been handcuffed, yes, Your Honor. They'd been handcuffed already? Yes, Your Honor. Okay, thank you. I have a few points in rebuttal about the first argument, but I'll start off with the plain view argument. So the answer to your question, Justice, is that, yes, the only way to tell the phones were stolen was to reach in the car and check them because the description of the cell phones. I'm sorry. The one phone was a certain color and had a certain color. Cell phone case. So, yes, we had a red phone and a black phone. The red phone was supposed to have a pink case over it that was distinctive. By the time the police stopped the car and are looking at the cell phones, there is no pink case. So we're talking about there is no pink case on either phone. So the distinguishing feature that could have been called a distinguishing feature of these cell phones is no longer on the cell phones, assuming these are the stolen cell phones. Therefore, the police are only seeing a red phone and a black phone in a car that has other phones and multiple occupants. There is nothing distinguishable that would put those phones in plain view. They were tracking the car. They were tracking the cell phones that were going the same route as the car. Their family and whatever deal they got. Yes. And then they stopped the car and they took the occupants out because, presumably, they're doing a tarry stop. But then they searched the car. There are no weapons. And they continued their search because they're now looking for the cell phones as the police said. But I thought the evidence was that they peered through the window and in the back window. Yes. That's Lomax's testimony was they continued to look because they were looking for the cell phones. They can still look. But that's not a search. It's not a search if the phones they find are in plain view, which is the whole And they argued it is in plain view here. Yes. But it's not in plain view because the immediately apparent the evidence has to be immediately apparent that it's contraband. And it was not in this case. Because those phones are just It's contraband and the right phone. It's a stolen phone that you're looking at. By looking at it, is that what you're saying? Precisely. Okay. And here, arguably, if the phones still had the pink case on them, we would be in a whole different ballgame. They would have a better argument as to the immediately apparent nature of the cell phones being the stolen phones. Here they don't have that. They call the first phone, nothing happens. So we're even more far removed. They call the second phone. They can't be sure that's the phone they're calling until they turn it over and see Murray's number on it, which is why our position is at the point where they've turned the phone around and seen Murray's number on it is when they have the stolen phones. So you're saying the ringing is not going to do any good. No, because it could be ringing for a phone could be ringing for a number of reasons. You could hear the ring here. But any set of number of people Even if it matches up, that doesn't mean it's the same. No, because they're just calling the phone. A bunch of people could be calling the phone. What time of night was this? It was sometime after midnight. Okay. But that doesn't mean that nobody else could be calling the phone. They can't be sure until they turn the phone over. And by that time, they've invaded an expected area of privacy for Murray, which is his car, in order to do that. So we're way past playing for you for them to do that. And the whole idea that it has to be a constitutional search for the further investigation versus the further investigation I believe I responded to that in my reply brief. But the state doesn't really cite anything that says that. I would like to address some of the things that were said about the speedy trial. Just briefly. I just have another question that Justice Wharton brought up. One of you said it was a Terry stop. Yes. It seems a little bit more advanced than a Terry stop if you put people in handcuffs. Well, it was the least we could say that it was a Terry stop because there were – the police describe it as how they conduct suspected felony stops, that they put everyone in custody and then do the search. That's not a Terry stop. I mean, we're describing it as a Terry stop because of what the police said they were doing at the beginning. Either way, if you describe it as something more, the police are way out of bounds. This was an illegal Fourth Amendment search. But even at the bare minimum where you can't describe it as a Terry stop, they went beyond even that by continuing that search instead of proceeding properly and getting a warrant if they had probable cause. So they had control of the car. They had the phones. They had the defendants. What would have prevented them from getting a warrant? Which, exactly, Your Honor. They could have gotten a warrant. They could have gone before a neutral magistrate, made their case for probable cause, got a warrant or not instead of doing the steps they did here. Do we have any case law yet that really defines the boundaries of when the police can use GPS tracking that you know of? Not that I can recall at this moment. Thank you for your time, Your Honor. You won't take a shot at me, sir. You won't take a shot at me, sir, since you're just dying. For God's sake, please.